IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVID R. HOSE *
206 E. Whitlock Ave.
Winchester, Virginia 22601 *

Plaintiff, *

vs. * Case No:____________________

THE UNITED STATES OF AMERICA, *
**SERVE ON:**
*
Jeffrey A. Taylor
555 4th Street, N.W. *
Washington, D.C. 20530
United States Attorney for *
the District of Columbia
*

**ALSO SERVE ON:** *
Peter D. Keisler,
Acting Attorney General of the *
United States
Department of Justice *
10th Street and Constitution
Avenue, N.W. *
Washington, D.C. 20530
*
**ALSO SERVE ON:**
United States Department of Defense *
United States Department of the Army
c/o Army Claims Service *
4411 Llewellyn Avenue
Fort Meade, MD 20755-2101 *

**ALSO SERVE ON:** *
United States Department of State
Office of the Legal Adviser *
Suite 203, South Building
2430 E Street, NW *
Washington, DC 20037-2800
*
Defendant

## COMPLAINT AND ELECTION OF JURY TRIAL

COMES NOW, Plaintiff, David R. Hose, (hereinafter, "Mr. Hose"), by and through his undersigned attorneys, and hereby sues Defendant, The United States of America, (hereinafter, "The United States"), and says:

## JURISDICTIONAL ALLEGATIONS

1. That this suit is brought for money damages for personal injury caused by the negligent or wrongful act or omission of employees of the United States while acting within the scope of their office or employment, and this Court has jurisdiction over the within cause of action pursuant to the Federal Torts Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq.

2. That a substantial part of the events or omissions giving rise to the claim occurred in this District, and venue is proper in this District pursuant to 28 U.S.C. § 1391(e)(1) and (2).

3. That at all times material hereto, David R. Hose, was a resident of Winchester, Virginia

4. That at all times mentioned herein, the United States Department of State (hereinafter, "Department of State") and the United States Department of Defense (hereinafter, "Department of Defense") are "federal agencies" within the meaning of 28 U.S.C. § 2671.

5. That on August 29, 2003, Mr. Hose filed an FTCA Administrative Claim for Personal Injury (Inhalation Anthrax), a completed standard form 95 and copies of related medical, employment and insurance records, with the United States Department of State pursuant to 28 U.S.C. § 2675, regarding the injuries and damages which were tortiously caused to Plaintiff on or about October 22, 2001. See Exhibit 1. Mr. Hose's claim requested damages in the amount of Twelve Million Dollars ($12,000,000.00). On October 13, 2003, Hose filed an

Amended FTCA Administrative Claim for Personal Injury (Inhalation Anthrax), a completed standard form 95 and copies of related medical, employment and insurance records, with the United States Department of State and the United States Department of Defense c/o United States Department of the Army, pursuant to 28 U.S.C. § 2675, regarding the injuries and damages which were tortiously caused to Plaintiff on or about October 22, 2001. See Exhibit 2. Mr. Hose's claim requested damages in the amount of Twelve Million Dollars ($12,000,000.00). Neither the United States Department of State, nor the United States Department of Defense have issued a final disposition of Plaintiff's administrative claim. The instant suit is duly commenced after the passing of six months following the filing of the administrative claim, as authorized under 28 U.S.C. § 2675(a).

## FACTS COMMON TO ALL COUNTS

6. That for eleven (11) years, Mr. Hose was a supervisor for the Department of State incoming diplomatic pouch and mail unit at State Annex 32 (SA-32) in Sterling, Virginia. Since 1995, Mr. Hose was employed there by private independent contractor Lam Associates, Inc., 8245 Boone Boulevard, Suite 200; Vienna, VA 22182-3832.

7. That while working at SA-32, Mr. Hose inhaled weapons-grade *Bacillus anthracis* spores (hereinafter, referred to as "anthrax" or "anthrax bacillus"), dispersed into the air from a contaminated envelope postmarked October 9, 2001. The envelope, addressed to Senator Patrick J. Leahy, then Chair of the Judiciary Committee, had been routed through the Virginia facility when the optical reader misread the hand-written 20510 ZIP code as 20520. While the nature of Mr. Hose's injuries makes it difficult to determine its exact occurrence, the contaminated envelope reportedly arrived at SA-32 on or about October 15, 2001, from the

Brentwood Mail Processing and Distribution Center, where two workers died of exposure to anthrax.

8. That on Monday, October 22, 2001, while driving home from Wal-Mart, Mr. Hose suddenly took ill. On Tuesday October 23, 2001, Mr. Hose reported to work, but was still experiencing symptoms. When those symptoms persisted, Mr. Hose went to the Winchester Medical Center on October 24, 2001, where he was diagnosed as having been exposed to inhalation anthrax and spent sixteen (16) days in excruciatingly pain in the Intensive Care Unit.

**COUNT I**
**STRICT LIABILITY FOR ULTRA-HAZARDOUS ACTIVITY**

9. That Mr. Hose re-alleges and incorporates herein the allegations of paragraphs 1 through 8, as if fully set forth herein

10. That on or before October 15, 2001, the United States, owned, managed, grew, experimented with, and/or was in control of a certain strain of anthrax bacterium at its Fort Detrick, Maryland facility and other facilities.

11. That the United States knew that the activities it carried on with the anthrax bacillus were ultra-hazardous activities in that the mere handling of microscopic quantities of this bacillus involved a potentially high degree of risk of harm and that potential harm was likely to be great, namely, the cause of human death.

12. That despite the above knowledge, the United States failed to adequately secure samples of this highly toxic lethal bacillus and, as early as 1992, samples of this formidable, dangerous, and highly lethal organism were known to be missing from the lab at Ft. Detrick, Maryland occupied by the United States Army Medical Research Institute for Infectious Diseases (USAMRIID), along with samples of the hanta virus and the ebola virus.

13. That on or before October 15, 2001, the United States owed a duty of care, in fact, the highest degree of care, to Mr. Hose, in its manufacturing, growing, handling, transporting, utilizing, processing, analyzing, distributing, warehousing, storing, or testing of the anthrax, based upon its ultra-hazardous and inherently dangerous nature.

14. That since the United States was engaging in the above ultra-hazardous activity, it is liable to Mr. Hose, for his injuries, even from an unpreventable miscarriage of the above activity, although the utmost care was exercised to prevent harm.

15. That as a direct and proximate result of the United States engaging in the ultra-hazardous activities set forth above, anthrax was obtained either from the USAMRIID lab at Ft. Detrick, Maryland or another location where the anthrax had previously been sent, and a portion of it was sent on October 9, 2001, addressed to Senator Patrick J. Leahy, which was then routed through State Annex 32 (SA-32) in Sterling, Virginia, where Hose was then exposed to the anthrax and suffered enormous personal injury, as a result, on or about October 22, 2001.

16. That as a direct and proximate result of the ultra-hazardous activity engaged in by the United States, Mr. Hose has been injured, has suffered damages and continues to suffer damages, including, but not limited to, the excruciating physical and mental pain in the years following October 22, 2001, the permanent affect on his physical and mental health, including being forced to endure great pain, disfigurement and physical suffering, mental anguish, and other damages, the sharply curtailed ability to enjoy life, the inability to earn income or maintain gainful employment which he will never be able to resume and other pecuniary losses, the ongoing and continuing medical expenses associated with his injuries, and Mr. Hose was forced to undergo extensive and painful medical treatment for the care of his injuries.

17. That at all times mentioned herein, Mr. Hose was free of any negligence or contributory negligence.

WHEREFORE, Plaintiff, David R. Hose, hereby demands judgment for compensatory damages of Twelve Million Dollars ($12,000,000.00) against Defendant, The United States of America, plus costs and interest.

**COUNT II**
**NEGLIGENCE**

18. That Mr. Hose re-alleges and incorporates herein the allegations of paragraphs 1 through 17, as if fully set forth herein

19. That on or before October 15, 2001, the United States was in the business of manufacturing, handling, transporting, utilizing, processing, analyzing, distributing, warehousing, storing, testing, and experimenting with anthrax.

20. That the substance anthrax is a known ultra-hazardous material requiring the highest degree of care in its handling, storage, use, or possession.

21. That the United States owed a duty of care and in fact, the highest degree of care in its manufacturing, handling, transporting, utilizing, processing, analyzing, distributing, warehousing, storing, testing, or experimenting with anthrax based upon its inherently dangerous nature.

22. That Mr. Hose's injury resulted from the negligence of the United States, in the following respects:

A. That the United States failed to properly or securely maintain or store the anthrax in its possession;

B. That the United States failed to properly inventory, warehouse, or catalog the anthrax in its possession;

C. That the United States failed to properly monitor employees who had access to the anthrax;

D. That the United States failed to maintain its premises in a manner precluding unauthorized individuals from having access to the anthrax;

E. That the United States failed to employ proper security measures to prevent the improper use, possession, access, and/or disbursement of the anthrax;

F. That the United States failed to establish appropriate procedures or protocols concerning the access of employees or independent contractors to the anthrax;

G. That the United States failed to implement inventory or catalog or monitoring systems in order to account for the anthrax in its possession;

H. That the United States failed to take appropriate security measures to insure the possession and access to the anthrax would be limited to those individuals with proper clearance;

I. That the United States failed to implement adequate security measures to prevent access to the anthrax by unauthorized individuals;

J. That the United States failed to act in a reasonable, prudent, and careful manner in conducting background investigations prior to hiring personnel and placing them in a position of authority and to having access to the anthrax;

K. That the United States failed to maintain a hiring system that adequately involved background investigation, interviewing, checking of references, the checking of

curriculum vitas, or other mechanisms to insure that job applicants were being honest and accurate and were suitable for employment in a position where they would have access to the anthrax;

L. That the United States failed to make sure that its employees or independent contractors were properly supervised and trained for the task for which they were employed and negligently allowed them to work and handle the ultra-hazardous material, anthrax, without proper supervision and/or training;

M. That the United States failed to take appropriate action upon actual or constructive notice of a potential problem or problems with individuals or security involving access to the anthrax at its facility or facilities and unreasonably failed to further investigate and/or otherwise take corrective actions such as discharge or reassignment.

N. That the United States failed to have any adequate system in place to track the anthrax it forwarded to other laboratories, schools and companies.

23. That as a direct and proximate and foreseeable result of the negligence of the United States, anthrax was obtained and sent October 9, 2001, addressed to Senator Patrick J. Leahy, which was then routed through State Annex 32 (SA-32) in Sterling, Virginia, where Hose was then exposed to the anthrax and suffered enormous personal injury, as a result, on or about October 22, 2001.

24. That as a result, Mr. Hose has been injured, has suffered damages and continues to suffer damages, including, but not limited to, the excruciating physical and mental pain in the years following October 22, 2001, the permanent affect on his physical and mental health, including being forced to endure great pain, disfigurement and physical suffering, mental

anguish, and other damages, the sharply curtailed ability to enjoy life, the inability to earn income or maintain gainful employment which he will never be able to resume and other pecuniary losses, the ongoing and continuing medical expenses associated with his injuries, and Mr. Hose was forced to undergo extensive and painful medical treatment for the care of his injuries.

25. That at all times mentioned herein, Mr. Hose was free of any negligence or contributory negligence.

WHEREFORE, Plaintiff, David R. Hose, hereby demands judgment for compensatory damages of Twelve Million Dollars ($12,000,000.00) against Defendant, The United States of America, plus costs and interest.

## COUNT III

## NEGLIGENCE (Cleaning of Mail-Sorting Machines)

26. That Mr. Hose re-alleges and incorporates herein the allegations of paragraphs 1 through 25, as if fully set forth herein.

27. That the United States owed a duty of care in providing a safe and secure work environment for its employees, including Mr. Hose and the employees of the Department of State incoming diplomatic pouch and mail unit at State Annex 32 (SA-32) in Sterling, Virginia.

28. That Carl Giempietro, SA-32's Branch Chief, and federal employee David Grant, SA-32's Building Manager, reasonably knew or should have known of the threat to human health and safety caused by using compressed air to clean the high-speed automated mail-sorting machines, disregarding well-established safety and health policies and standards, the machines were reportedly still being cleaned as late as early October 2001 with compressed air rather than by vacuuming, thereby causing the aerosolization of hazardous dust particles—including spores of Bacillus anthracis in October 2001—from the contaminated mail.

29. That in the days prior to Mr. Hose's inhalation of anthrax spores, it was known that envelopes containing such spores had been mailed, that they posed a potentially deadly threat to persons involved in mail sorting, and that someone had already died as a result.

30. That none of the employees of the United States, in charge of SA-32 operations, instructed Reggie Bynum, the Lam Associates employee who usually cleaned the machines, or project manager Tony Chapman, another Lam Associates employee, to discontinue the hazardous practice of using compressed air to clean the high-speed automated mail-sorting machines.

31. That despite knowledge that envelopes containing inhalation anthrax spores were circulating through the United States mail, the employees of the United States in charge of SA-32 operations, acting as agents and servants within the scope of their employment, failed to halt the use of compressed air in the cleaning of the high-speed automated mail-sorting machines and instead mandate vacuuming to minimize the threat posed by contaminated mail to the health and safety of the employees under their supervision.

32. That as a direct and proximate and foreseeable result of the negligence of the employees of the United States, acting as agents and servants within the scope of their employment, anthrax was aerosolized when the sorting machines at SA-32, equipped with compressed air cleaning systems; rather than vacuum cleaning systems, processed the letter addressed to Senator Patrick J. Leahy, postmarked October 9, 2001. This aerosolized anthrax was distributed throughout SA-32, Mr. Hose's workplace, where Mr. Hose was then exposed to the anthrax and suffered enormous personal injury, as a result, on or about October 22, 2001.

33. That as a result of this negligence, Mr. Hose has been injured, has suffered damages and continues to suffer damages, including, but not limited to, the excruciating pain in the years following October 22, 2001, the permanent affect on his physical and mental health, including being forced to endure great pain, disfigurement and physical suffering, mental

anguish, and other damages, the sharply curtailed ability to enjoy life, the inability to earn income or maintain gainful employment which he will never be able to resume and other pecuniary losses, the ongoing and continuing medical expenses associated with his injuries, and Mr. Hose was forced to undergo extensive and painful medical treatment for the care of his injuries.

34. That at all times mentioned herein, Mr. Hose was free of any negligence or contributory negligence.

WHEREFORE, Plaintiff, David R. Hose, hereby demands judgment for compensatory damages of Twelve Million Dollars ($12,000,000.00) against Defendant, The United States of America, plus costs and interest.

Respectfully submitted,

Leslie D. Hershfield (Fed. Bar No. 427135)
Schulman, Treem, Kaminkow,
Gilden & Ravenell, P. A.
The World Trade Center, Suite 1800
401 East Pratt Street
Baltimore, Maryland 21202
Telephone: 410-332-0850
Facsimile: 410-332-0866

*Counsel for Plaintiff David R. Hose*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVID R. HOSE *
206 E. Whitlock Ave.
Winchester, Virginia 22601 *

Plaintiff, *

vs. * Case No:____________________

THE UNITED STATES OF AMERICA, *
**SERVE ON:**
*
Jeffrey A. Taylor
555 4th Street, N.W. *
Washington, D.C. 20530
United States Attorney for *
the District of Columbia
*

**ALSO SERVE ON:** *
Peter D. Keisler,
ActingAttorney General of the *
United States
Department of Justice *
10th Street and Constitution
Avenue, N.W. *
Washington, D.C. 20530
*
**ALSO SERVE ON:**
United States Department of Defense *
United States Department of the Army
c/o Army Claims Service *
4411 Llewellyn Avenue
Fort Meade, MD 20755-2101 *

**ALSO SERVE ON:** *
United States Department of State
Office of the Legal Adviser *
Suite 203, South Building
2430 E Street, NW *
Washington, DC 20037-2800
*

Defendant

**ELECTION OF JURY TRIAL**

The Plaintiff, David R. Hose, hereby elects to have this matter tried before a jury.

Leslie D. Hershfield (Fed. Bar No.427135)
Schulman, Treem, Kaminkow,
Gilden & Ravenell, P. A.
The World Trade Center, Suite 1800
401 East Pratt Street
Baltimore, Maryland 21202
Telephone: 410-332-0850
Facsimile: 410-332-0866

*Counsel for Plaintiff David R. Hose*

**Exhibit 1**

SCHULMAN, TREEM, KAMINKOW,
GILDEN & RAVENELL, P.A.
ATTORNEYS AT LAW
SUITE 1800, THE WORLD TRADE CENTER
401 EAST PRATT STREET
BALTIMORE, MARYLAND 21202
WWW.STKGRLAW.COM

JOSHUA R. TREEM*
ROBERT B. SCHULMAN
MICHAEL E. KAMINKOW
STEVE G. GILDEN
KENNETH W. RAVENELL
HARRY LEVY**
LESLIE D. HERSHFIELD**
ERIN C. MURPHY
TIMOTHY K. DOLE
MICHAEL C. LIND
IVAN J. BATES
CRESTON P. SMITH

* ALSO ADMITTED IN CO
** ALSO ADMITTED IN D.C.

PHONES: 410-332-0850
410-659-0111
FACSIMILE: 410-332-0866

August 29, 2003

**SENT BY CERTIFIED MAIL**
United States Department of State
Office of the Legal Adviser
Suite 203, South Building
2430 E Street, NW
Washington, DC 20037-2800

RE: **FTCA Administrative Claim for Personal Injury (Inhalation Anthrax)**

Dear Madam/Sir:

On behalf of our client, David R. Hose, one of America's six inhalation anthrax survivors, we are filing this administrative claim with the Department of State, seeking proper compensation from the U.S. Government pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq. Mr. Hose has suffered severe personal injuries as a proximate result of negligence by federal employees acting within the scope of their employment at the Department of State diplomatic pouch and mail annex in Sterling, Virginia. Enclosed please find an executed Standard Form 95, an attending physician statement, an employer statement, and related insurance and medical records.

Nature and Extent of Personal Injury: For 11 years, Mr. Hose had been a supervisor for the incoming pouch mail unit at State Annex 32 (SA-32). Since 1995, he had been employed there by private independent contractor Lam Associates, Inc. (8245 Boone Boulevard, Suite 200; Vienna, VA 22182-3832; 703-442-9830). As widely reported, Mr. Hose inhaled weapons-grade *Bacillus anthracis* spores dispersed into the air from a contaminated envelope postmarked October 9, 2001. The envelope, addressed to Senator Patrick J. Leahy, then-Chair of the Judiciary Committee, had been routed through the Virginia facility when the optical reader misread the hand-written 20510 ZIP code as 20520. While the nature of Mr. Hose's injury makes it difficult to determine its exact occurrence, the contaminated envelope reportedly arrived at SA-32 on or about October 15, 2001, from the Brentwood Mail Processing and Distribution Center, where two workers died of inhalation anthrax.

On Monday, October 22, 2001, while driving home from Wal-Mart, Mr. Hose suddenly took ill. The next day, Mr. Hose reported to work, but was still experiencing symptoms, as his co-worker Barbara Fravel can attest. When those symptoms persisted, Mr. Hose went to the Winchester Medical Center on October 24, 2001, where he spent 16 days in excruciatingly pain in the Intensive Care Unit. As *Washington Post* Staff Writers Michael Laris and Jennifer Lenhart reported, there were "bleeding ulcers gnawing at his gut," and his chest lymph nodes had "swollen up like cherry tomatoes."

> Hose was delirious, his skin so lifeless and gray his family wouldn't give him a mirror. He contracted pneumonia, and doctors drained a pint and a half of fluid from around his lungs with a needle through his back. His heart rate shot well above 160 beats per minute, twice its normal level. . . . His lymph nodes swelled with anthrax spores. The bacteria multiplied and produced toxins that affected his entire body and likely caused an irregular heartbeat that Hose developed in the hospital . . . . The treatment regimen also eventually did its job. He finally could walk. His fever dipped. His vital signs stabilized. And he felt well enough to take a phone call from Secretary of State Colin L. Powell. . . . When they rolled him out the hospital door after 16 hellish days, Hose said, he remained "weak as a kitten." Hose has begun physical therapy to rebuild atrophied muscles. . . .

*The Washington Post*, "Escaping the Grip of Anthrax," December 6, 2001.

Mr. Hose was fortunate to have survived, unlike five other Americans who died from inhalation anthrax. But the anthrax spores radically disrupted his life. As infectious disease specialist Mark Galbraith, M.D., Mr. Hose's attending physician at Winchester Medical Center, confirms in his enclosed statement, the inhalation anthrax "created a life-threatening infection," resulting in "inflamation of his mediastinal lymph nodes, decreased oxygen levels, pleural effusions, and subsequent complications of gastrointestinal bleeding and atrial fibrillation." Indeed, Dr. Galbraith warns that Mr. Hose's prognosis remains "guarded" and that "at this point [he] do[es] not anticipate that [Mr. Hose] will return to gainful employment." Residual effects include reduced stamina, easy fatigability, memory loss, and respiratory problems. Mr. Hose requires a "combination of inhaled steroids and bronchodilators for new onset bronchospastic airway disease." Also, "his chronic degenerative joint disease has flared and has required multiple medications to control his pain." Dr. Galbraith also reports that Mr. Hose is being treated for depression.



Additionally, Mr. Hose reports regular nausea and headaches, chronic fatigue, and joint and chest pains. He requires an inhaler every day for the anthrax-caused asthma and takes Protonix for stomach

ulcers. He takes three medicines to address his irregular heart beat, unstable blood pressure, and chronic insomnia. His immune system being compromised, he is at significantly higher risk of contracting pneumonia and other illnesses. He has developed vision problems, causing him to see "floaters" and bright lights, and is unable to walk far, even with a cane. Mr. Hose also reports diminished neurological functioning, short-term memory loss, extreme mood swings, and depression.

The inhalation anthrax has also taken its financial toll on Mr. Hose. At the time of his injury, he earned an annual salary of $40,705.60. He is now physically incapable of resuming employment. A native of Manhattan, Kansas, he will be 61 years old this September 8th and has been married for the past 30 years to his wife Connie Hose, who is financially dependent on him, unable to drive, and no longer able to work. They have three adult children, Sherri Libby, Terri Chrisman, and David Hose II, and are not a wealthy couple. Mrs. Hose, who has developed Type II diabetes, now devotes herself full-time to his care, assisting him with his physical therapy regimen, bathing, feeding, dressing, undressing, administering medications at correct times, and preparing meals for his special diet.

Mr. Hose has been receiving Virginia Worker's Compensation as a Lam Associates employee, but has recently been warned that his employment may soon officially be terminated. Mr. Hose is being asked to pay all his Carefirst Blue Cross/Blue Shield medical insurance premiums. He now faces the prospect of having to find affordable medical insurance coverage despite the fact that his medical history now includes inhalation anthrax. He receives $15 a month from Social Security, the maximum he can receive for the next eight years. He remains ineligible for Medicare until April 2004. His only other relevant insurance coverage is a $50/month long term disability policy that runs out soon (Claim #N63985-1-231548750-990), which was obtained through his employer with the Principal Life Insurance Company, 711 High Street, Des Moines, Iowa 50392-0001. In desperation, Mr. Hose has had to seek financial help from the Red Cross, the Fellowship Bible Church, and family and friends to meet his basic needs. In short, Mr. Hose's injury not only subjected him to excruciating pain and suffering in the weeks following October 22, 2001, but also has permanently affected his physical and mental health, sharply curtailed his ability to enjoy life, and undermined his income earning capacity.

<u>Basis of Claim:</u> We believe it is clear that one of the proximate causes of Mr. Hose's severe injury was the protocol negligently put into place by officials at the Department of State facility for the routine cleaning of its high-speed automated mail-sorting machines. Disregarding well-established safety and health policies and standards, the machines at SA-32 were reportedly still being cleaned as late as early October 2001 with compressed air rather than by vacuuming, thereby causing the aerosolization of anthrax spores from the contaminated mail. Were it not for this hazardous practice at SA-32, we think it is clear that Mr. Hose would never have inhaled anthrax spores.

Our initial investigation has uncovered facts demonstrating that officials in charge of the SA-32 mail-sorting operation knew or reasonably should have known of the danger posed by using compressed air. On October 24, 2001, the Centers for Disease Control and Prevention belatedly issued an official

CDC health advisory setting forth procedures "for workers potentially exposed to B. anthracis spores while handling or processing mail." The CDC urged that mail-sorting facilities "use an industrial vacuum cleaner equipped with a High-Efficiency Particulate Air (HEPA) filter as the first choice for cleaning high-speed mail-sorting equipment. If blowdown/blow-off must be used, first vacuum to remove as much dust as possible." The CDC advisory was based on information already widely known: "A major source of dust in mail handling facilities occurs during the operation and maintenance of high-speed mail handling machines. The 'blowdown' of these machines in the maintenance operation can aerosolize particles in the size range of B. anthracis spores."

All of this was certainly not new information. Years before, the United States Postal Service had mandated that all automated mail-sorting machines be cleaned by "[r]emov[ing] dust by vacuuming rather than by blowing down an area with compressed air whenever possible." Indeed, USPS headquarters had issued a "Dust Control" directive on May 11, 1999, urging stricter enforcement of the vacuuming policy. Even before the 1999 directive, the National Institute for Occupational Safety and Health (NIOSH) had announced that "blowout of dust from sorting machines by compressed air" in mail-sorting facilities was the primary cause of respiratory ailments such as infections, cough, asthma, and allergic symptoms and was conducting Health Hazard Evaluations. Meanwhile, the Occupational Safety and Health Agency (OSHA) had issued numerous citations for "improper use of compressed air" in mail-sorting facilities.

Further investigation would only further confirm that Carl Giempietro, SA-32's State Department Branch Chief, and federal employee David Grant, SA-32's Building Manager, reasonably knew or should have known of the threat to human health and safety caused by using compressed air to clean the automated mail-sorting machines. None of the officials in charge of SA-32 operations, however, instructed Reggie Bynum, the Lam Associates employee who usually cleaned the machines, or project manager Tony Chapman, another Lam Associates employee, to discontinue the hazardous practice.




What makes the negligence of these officials particularly egregious in Mr. Hose's case is the fact that, in the days prior to his inhalation of anthrax spores, it was already known that envelopes containing such spores had been mailed, that they posed a potentially deadly threat to persons involved in mail sorting, and that someone had already died as a result. Yet, despite this knowledge, those in charge of SA-32 operations failed to halt the use of compressed air in the cleaning of the mail-sorting machines and mandate vacuuming instead to minimize the threat posed by contaminated mail to the health and safety of the employees under their supervision. Had government officials promptly taken this or some comparably effective action upon learning of the anthrax threat, anthrax spores would not have been aerosolized, causing such devastating injury to Mr. Hose and other mail sorters.

More fundamentally, it must be said, we find it unconscionable that neither the Bush Administration nor the United States Congress has bothered to take any action whatsoever to compensate the anthrax terrorism victims, many of whom were loyally serving the U.S. government at the time of their injuries or deaths. Elemental principles dictate that persons victimized as a result of their association or identification with the U.S. Government or its policies should be compensated by that government, whether they work in a U.S. mail-sorting facility, in a federal building in Oklahoma City, or in an embassy abroad. We are frankly appalled that elected U.S. officials have shown such callous disregard for American victims of terrorism like David Hose, while having demonstrated such great concern for those who were victimized in the halls of the Pentagon and in the high-rise offices of New York's World Trade Center. The lives of these average American civilians are no less deserving.

Mr. Hose's claim for compensation is particularly compelling, since he was injured not only because he bravely continued doing his job, helping to sort the mail of high-level U.S. government officials in the days following the well-publicized anthrax mail threat, but also because government officials failed to enforce established health and safety measures that could easily have prevented his injury.

If any additional documentation is needed or desired, we would expect prompt notification so that Mr. Hose's administrative claim can be duly supplemented in a timely manner. We would kindly request written confirmation within two weeks of receipt that this claim has been duly presented.

Sincerely Yours,

Joshua R. Treem, Esq.

Timothy K. Dole, Esq.
Attorneys for David R. Hose

Enclosures

cc (w/o enclosures): David R. Hose (206 E. Whitlock Avenue, Winchester, VA 22601-4430)
Sen. George Allen (Va.)
Sen. John Warner (Va.)
Sen. Patrick J. Leahy (Vt.)
Rep. Frank R. Wolf (Va.)

| **CLAIM FOR DAMAGE, INJURY, OR DEATH** | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROROVED OMB NO. 1105-0008 EXPIRES 5-31-05 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any. *(See instructions on reverse.) (Number, street, city, State and Zip Code)* |
|---|---|
| U.S. Department of State; Office of the Legal Advisor<br>Suite 203, South Building; 2430 E. Street NW<br>Washington, DC 20037-2800 | David R. Hose; 206 E. Whitlock; Winchester, VA 22601-4430; Joshua Treem, Esq.; 401 E. Pratt St., Ste. 1800; Baltimore, MD 21202 |

| 3. TYPE OF EMPLOYMENT MILITARY CIVILIAN | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME *(A.M. OR P.M)* |
|---|---|---|---|---|
| CIVILIAN X | 09/08/1942 | Married | approx. 10/9/01-10/22/01 | unknown |

8. Basis of Claim *(State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)*

See Attached Letter, incorporated herein by reference.

9. **PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT *(Number, street, city, State, and Zip Code)*

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. *(See instructions on reverse side)*

N/A

10. **PERSONAL INJURY/WRONGFUL DEATH**

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT

See Attached Letter, incorporated herein by reference.

11. **WITNESSES**

| NAME | ADDRESS *(Number, street, city, State, and Zip Code)* |
|---|---|
| Carl Giempietro; David Grant; Tony Chapman, Barbara Fravel, Reggie Bynum | (Giempietro) 101 Int'l Dr.; Sterling, VA 20166-9442; (Grant) unknown; (Chapman, Fravel, Bynum) Lam Associates, Inc., 8245 Boone Blvd., Ste. 200; Vienna, VA 22182-3832 |

12. *(See instructions on reverse)* **AMOUNT OF CLAIM** *(in dollars)*

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL *(Failure to specify may cause forfeiture of your rights.)* |
|---|---|---|---|
| N/A | $12,000,000.00 | N/A | $12,000,000.00 |

**I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM**

| 13a. SIGNATURE OF CLAIMANT *(See instructions on reverse side.)* | 13b. Phone number of signatory | 14. DATE OF CLAIM |
|---|---|---|
| David R. Hose Sr. | 540-678-8953 | 8-29-03 |

| **CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM** | **CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS** |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the United States. *(See 31 U.S.C. 3729.)* | Imprisonment for not more than five years and shall be subject to a fine of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the United States. *(See 18 U.S.C.A. 287.)* |

**95-108**
**Previous editions not usable**

**NSN 7540-00-634-4046**

**STANDARD FORM 95 (Rev. 7-85)**
**PRESCRIBED BY DEPT. OF JUSTICE**
**28 CFR 14.2**

*Office of the Legal Adviser*
*Suite 203, South Building*
*2430 E Street, NW*
*Washington, DC 20037–2800*

September 29, 2003

**Via U.S. Mail**

Joshua R. Treem, Esq.
Timothy K. Dole, Esq.
Schulman, Treem, Kaminkow,
Gilden & Ravenell, P.A.
Suite 1800, The World Trade Center
401 East Pratt Street
Baltimore, MD 21202

Re: Administrative Tort Claim of David R. Hose

Dear Messrs. Treem and Dole:

The purpose of this letter is to inform you that the tort claim and related materials you submitted on behalf of your client, Mr. David Hose, were received by this office on September 3, 2003. The Office of International Claims and Investment Disputes (L/CID) is responsible for processing administrative tort claims that are presented to the Department of State.

The claims will be considered under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680. This statute, in conjunction with other law, provides a limited waiver of United States sovereign immunity in the case of certain tort claims for money damages. To succeed in an administrative tort claim, the claimant must show that the injury or damage occurred as a result of a negligent or wrongful act or omission of an employee of the United States Government acting within the scope of his or her employment.

Based on the information you provided, we will conduct an investigation into the merits of your client's claim. Please be patient, as we try to resolve tort claims in the order that we receive them. If we need additional information, we will contact you directly. You will be notified of our decision regarding the claims by mail. If you have any questions, you may call me at (202) 776-8440.

Sincerely,

Kevin M. Gleeson
Attorney-Adviser

OCT 0 3 2003

**Exhibit 2**

SCHULMAN, TREEM, KAMINKOW,
GILDEN & RAVENELL, P.A.
ATTORNEYS AT LAW
SUITE 1800, THE WORLD TRADE CENTER
401 EAST PRATT STREET
BALTIMORE, MARYLAND 21202
WWW.STKGRLAW.COM

JOSHUA R. TREEM*
ROBERT B. SCHULMAN
MICHAEL E. KAMINKOW
STEVE G. GILDEN
KENNETH W. RAVENELL
LESLIE D. HERSHFIELD**
ANDREW M. DANSICKER***
ERIN C. MURPHY
TIMOTHY K. DOLE
MICHAEL C. LIND
IVAN J. BATES
CRESTON P. SMITH

* ALSO ADMITTED IN CO
** ALSO ADMITTED IN DC
*** ALSO ADMITTED IN NY

PHONES: 410-332-0850
410-659-0111
FACSIMILE: 410-332-0866

October 13, 2003

**SENT BY CERTIFIED MAIL**

United States Department of Defense
United States Department of the Army
c/o Army Claims Service
4411 Llewellyn Avenue
Fort Meade, MD 20755-2101

United States Department of State
Office of the Legal Adviser
Attn: Kevin M. Gleeson, Esq.
Suite 203, South Building
2430 E Street, NW
Washington, DC 20037-2800

RE: ***Amended* FTCA Administrative Personal Injury Claim (Inhalation Anthrax)**

Dear Madams/Sirs:

On behalf of our client, David R. Hose, one of America's six inhalation anthrax survivors, we are filing this amended administrative claim with the Department of Defense, Department of the Army, and Department of State, seeking proper compensation from the U.S. Government pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq. Mr. Hose has suffered severe personal injuries as a proximate result of negligence by federal employees in these agencies acting within the scope of their employment. Enclosed please find an executed Standard Form 95 and copies of related medical, employment and insurance records. (Note: copies previously sent to Department of State).

Nature and Extent of Personal Injury: For 11 years, Mr. Hose had been a supervisor for the Department of State incoming diplomatic pouch and mail unit at State Annex 32 (SA-32) in Sterling, Virginia. Since 1995, he had been employed there by private independent contractor Lam Associates,

Inc. (8245 Boone Boulevard, Suite 200; Vienna, VA 22182-3832; 703-442-9830). As widely reported, Mr. Hose inhaled weapons-grade *Bacillus anthracis* spores dispersed into the air from a contaminated envelope postmarked October 9, 2001. The envelope, addressed to Senator Patrick J. Leahy, then-Chair of the Judiciary Committee, had been routed through the Virginia facility when the optical reader misread the hand-written 20510 ZIP code as 20520. While the nature of Mr. Hose's injuries makes it difficult to determine its exact occurrence, the contaminated envelope reportedly arrived at SA-32 on or about October 15, 2001, from the Brentwood Mail Processing and Distribution Center, where two workers died of inhalation anthrax.



On Monday, October 22, 2001, while driving home from Wal-Mart, Mr. Hose suddenly took ill. The next day, Mr. Hose reported to work, but was still experiencing symptoms, as his co-worker Barbara Fravel can attest. When those symptoms persisted, Mr. Hose went to the Winchester Medical Center on October 24, 2001, where he spent 16 days in excruciatingly pain in the Intensive Care Unit. As *Washington Post* Staff Writers Michael Laris and Jennifer Lenhart reported, there were "bleeding ulcers gnawing at his gut," and his chest lymph nodes had "swollen up like cherry tomatoes."

> Hose was delirious, his skin so lifeless and gray his family wouldn't give him a mirror. He contracted pneumonia, and doctors drained a pint and a half of fluid from around his lungs with a needle through his back. His heart rate shot well above 160 beats per minute, twice its normal level. . . . His lymph nodes swelled with anthrax spores. The bacteria multiplied and produced toxins that affected his entire body and likely caused an irregular heartbeat that Hose developed in the hospital . . . . The treatment regimen also eventually did its job. He finally could walk. His fever dipped. His vital signs stabilized. And he felt well enough to take a phone call from Secretary of State Colin L. Powell. . . . When they rolled him out the hospital door after 16 hellish days, Hose said, he remained "weak as a kitten." Hose has begun physical therapy to rebuild atrophied muscles. . . .

*The Washington Post*, "Escaping the Grip of Anthrax," December 6, 2001.

Mr. Hose was fortunate to have survived, unlike five other Americans who died from inhalation anthrax. But the anthrax spores radically disrupted his life. As infectious disease specialist Mark Galbraith, M.D., Mr. Hose's attending physician at Winchester Medical Center, confirms in his enclosed statement, the inhalation anthrax "created a life-threatening infection," resulting in "inflamation of his mediastinal lymph nodes, decreased oxygen levels, pleural effusions, and subsequent complications of gastrointestinal bleeding and atrial fibrillation." Indeed, Dr. Galbraith

warns that Mr. Hose's prognosis remains "guarded" and that "at this point [he] do[es] not anticipate that [Mr. Hose] will return to gainful employment." Residual effects include reduced stamina, easy fatigability, memory loss, and respiratory problems. Mr. Hose requires a "combination of inhaled steroids and bronchodilators for new onset bronchospastic airway disease." Also, "his chronic degenerative joint disease has flared and has required multiple medications to control his pain." Dr. Galbraith also reports that Mr. Hose is being treated for depression.

Mr. Hose reports regular nausea and headaches, chronic fatigue, and joint and chest pains. He requires an inhaler every day for the anthrax-caused asthma and takes Protonix for stomach ulcers. He takes three medicines to address his irregular heart beat, unstable blood pressure, and chronic insomnia. His immune system being compromised, he is at significantly higher risk of contracting pneumonia and other illnesses. He has developed vision problems, causing him to see "floaters" and bright lights, and is unable to walk far, even with a cane. Mr. Hose also reports diminished neurological functioning, short-term memory loss, extreme mood swings, and depression.

The inhalation anthrax has also taken its financial toll. At the time of his injuries, Mr. Hose earned an annual salary of $40,705.60. He is now physically incapable of resuming employment. A native of Manhattan, Kansas, he will be 61 years old this September 8th and has been married for the past 30 years to his wife Connie Hose, who is financially dependent on him, unable to drive, and no longer able to work. They have three adult children, Sherri Libby, Terri Chrisman, and David Hose II, and are not a wealthy couple. Mrs. Hose, who has developed Type II diabetes, now devotes herself full-time to his care, assisting him with his physical therapy regimen, bathing, feeding, dressing, undressing, administering medications at correct times, and preparing meals for his special diet.

Mr. Hose has been receiving Virginia Worker's Compensation as a Lam Associates employee, but has recently been warned that his employment may soon officially be terminated. Mr. Hose is being asked to pay all his Carefirst Blue Cross/Blue Shield medical insurance premiums. He now faces the prospect of having to find affordable medical insurance coverage despite the fact that his medical history now includes inhalation anthrax. He receives $15 a month from Social Security, the maximum he can receive for the next eight years. He remains ineligible for Medicare until April 2004. His only other relevant insurance coverage is a $50/month long term disability policy that runs out soon (Claim #N63985-1-231548750-990), which was obtained through his employer with the Principal Life Insurance Complany, 711 High Street, Des Moines, Iowa 50392. In desperation, Mr. Hose has had to seek financial help from the Red Cross, the Fellowship Bible Church, and family and friends to meet his basic needs. Mr. Hose's injuries not only subjected him to excruciating pain in the weeks following October 22, 2001, but also has permanently affected his physical and mental health, sharply curtailed his ability to enjoy life, and undermined his income earning capacity.

Basis of Claim: While the person who mailed the anthrax-contaminated envelopes to Capitol Hill has yet to be identified or prosecuted, geneticist Paul Keim at Northern Arizona University in

Flagstaff and the Institute for Genomic Research in Rockville, Md., have reportedly concluded, based on DNA sequence comparisons, that the weapons-grade (1 to 5 microns) Ames-strain spores mailed were likely produced at the U.S. Army Medical Research Institute of Infectious Diseases (USAMRIID) at Fort Detrick, Md. or another laboratory participating in the U.S. Defense Department's germ warfare program. A scientist told the *Washington Post* for a December 16, 2001 article that "the original source" of the anthrax in the D.C. letters "had to have been USAMRIID," the custodian of significant military stocks of anthrax.

The U.S. Government evidently was responsible for the ultra hazardous and abnormally dangerous manufacture, testing, storage, utilization, inventory, maintenance and/or control of the Ames-strain *Bacillus anthracis* spores that so severely injured Mr. Hose. The Department of Defense negligently failed to take sufficient steps to properly monitor, maintain, store, account for, transport, identify and/or secure the anthrax spores that were grown and used for experiments on premises under its control. Those lax security measures made it possible for anthrax spore samples to be removed from government-controlled premises, which the evidence is expected to show was a but-for cause of Mr. Hose's injuries. The U.S. Government knew or should have known prior to Mr. Hose's injuries about this lack of proper security measures and that its ultra hazardous activity posed a high degree of risk to others and that the potential for said harm was great, and yet it failed to institute adequate safeguards. The Department of Defense reportedly distributed samples of *Bacillus anthracis* to facilities across the country—and overseas—without proper security procedures to inventory, monitor and track them so as to guard against terrorist use. Thus, as a proximate result of the U.S. Government's negligence, Mr. Hose was exposed to weapons-grade anthrax spores in Sterling, Va., causing him severe injuries.



Additionally, the General Accounting Office recently reported security weaknesses in the Pentagon's Internet sales of surplus biological and chemical laboratory equipment that could be used to produce biochemical weaponry. The Defense Department had inadequate security measures in place to prevent such equipment from ending up in the hands of would-be bioterrorists. As the anthrax investigation continues, the evidence could ultimately establish that such negligence by the Defense Department was also a key proximate cause of Mr. Hose' injuries from inhalation anthrax.

Another proximate cause of Mr. Hose's severe injuries was the protocol negligently put into place by officials at the State Department facility where he worked for the routine cleaning of its high-speed automated mail-sorting machines. Disregarding well-established safety and health policies and standards, the machines were reportedly still being cleaned as late as early October 2001 with compressed air rather than by vacuuming, thereby causing the aerosolization of hazardous dust

particles—including spores of *Bacillus anthracis* in October 2001—from the contaminated mail. Were it not for this hazardous practice at SA-32, Mr. Hose would not have inhaled anthrax spores.

Our initial investigation has uncovered facts showing that officials in charge of the SA-32 mail-sorting operation knew or reasonably should have known of the danger posed by using compressed air. On October 24, 2001, the Centers for Disease Control and Prevention belatedly issued an official CDC health advisory setting forth procedures "for workers potentially exposed to B. anthracis spores while handling or processing mail." The CDC urged that mail-sorting facilities "use an industrial vacuum cleaner equipped with a High-Efficiency Particulate Air (HEPA) filter as the first choice for cleaning high-speed mail-sorting equipment. If blowdown/blow-off must be used, first vacuum to remove as much dust as possible." The CDC advisory was based on information already widely known: "A major source of dust in mail handling facilities occurs during the operation and maintenance of high-speed mail handling machines. The 'blowdown' of these machines in the maintenance operation can aerosolize particles in the size range of B. anthracis spores."




All of this was certainly not new information. Years before, the United States Postal Service had mandated that all automated mail-sorting machines be cleaned by "[r]emov[ing] dust by vacuuming rather than by blowing down an area with compressed air whenever possible." Indeed, USPS headquarters had issued a "Dust Control" directive on May 11, 1999, urging stricter enforcement of the vacuuming policy. Even before the 1999 directive, the National Institute for Occupational Safety and Health (NIOSH) had announced that "blowout of dust from sorting machines by compressed air" in mail-sorting facilities was the primary cause of respiratory ailments such as infections, cough, asthma, and allergic symptoms and was conducting Health Hazard Evaluations. Meanwhile, the Occupational Safety and Health Agency (OSHA) had issued numerous citations for "improper use of compressed air" in mail-sorting facilities.

Further investigation would only confirm that Carl Giempietro, SA-32's Branch Chief, and federal employee David Grant, SA-32's Building Manager, reasonably knew or should have known of the threat to human health and safety caused by using compressed air to clean the automated mail-sorting machines. None of the officials in charge of SA-32 operations, however, instructed Reggie Bynum, the Lam Associates employee who usually cleaned the machines, or project manager Tony Chapman, another Lam Associates employee, to discontinue the hazardous practice.

What makes the negligence of these officials particularly egregious in Mr. Hose's case is the fact that, in the days prior to his inhalation of anthrax spores, it was already known that envelopes

containing such spores had been mailed, that they posed a potentially deadly threat to persons involved in mail sorting, and that someone had already died as a result. Yet, despite this knowledge, those in charge of SA-32 operations failed to halt the use of compressed air in the cleaning of the mail-sorting machines and instead mandate vacuuming to minimize the threat posed by contaminated mail to the health and safety of the employees under their supervision. Had officials promptly taken this or some comparably effective action upon learning of the anthrax threat, anthrax spores would not have been aerosolized, causing such devastating injuries to Mr. Hose and other mail sorters.

Potential witnesses in addition to David Hose include the following: Carl Giempietro, 101 International Drive, Sterling, VA 20166-9442; David Grant; Tony Chapman, Barbara Fravel, and Reggie Bynum, Lam Associates, Inc., 8245 Boone Blvd., Suite 200, Vienna, VA 22182-3832; Mark Galbraith, M.D., Infectious Disease Specialist, Selma Medical Associates, 104 Selma Drive, Winchester, VA 22601; William C. Patrick III, Ph.D.; Steven J. Hatfill; Paul S. Keim, Ph.D., Northern Arizona University, Flagstaff, AZ 86001; Don Foster, Ph.D., Vassar College, 124 Raymond Avenue, Poughkeepsie, NY 12604; Matthew Meselson, Ph.D., Department of Molecular and Cellular Biology, Harvard University, Cambridge, MA; Philip S. Brachman, Ph.D., Department of International Health, Rollins School of Public Health, Emory University; Bradley Perkins, M.D., Dr. Arnold F. Kaufmann, Centers for Disease Control (CDC), Atlanta, GA.; Kenneth Alibek, Ph.D., President, Hadron Advanced Biosystems, Center for Biodefense, George Mason University, Manassas, VA; Dr. Barbara Hatch Rosenberg, Chair of Working Group on Biological Weapons, Federation of American Scientists, NY; Richard Crosland, Ph.D., 6001 Executive Boulevard, Bethesda, MD 20892-9529; Ayaad Assaad, M.D., 8019 Hollow Reed Court, Frederick, MD 21701; Rosemary A. McDermott, Esq., Counsel for Assaad, 128 E. Main Street, Thurmont, MD 21788; Col. Arthur Friedlander, Col. Charles Eitzen, Col. David R. Franz, Lt. Col. Dr. Philip M. Zack, Lt. Clint Taylor, Kay Mereish, Elise Bridges, John Ezzel, Marian Rippy, Kathy Wilhelmsen, USAMRIID, 1425 Porter St., Fort Detrick, Frederick, MD 21702-5011; Mark Wilson, Scott Decker, Federal Bureau of Investigation, Washington Field Office, Washington, DC 2003; Michael Laris, Jennifer Lenhart, Gary Matsumoto, The Washington Post, Washington, D.C.; Nicholas D. Kristof, The New York Times; Scott Shane, The Baltimore Sun.

More fundamentally, it must be said, we find it unconscionable that neither the Bush Administration nor the United States Congress has taken any action whatsoever to compensate the anthrax terrorism victims, many of whom were loyally serving their government at the time of their injuries or deaths. Elemental principles dictate that persons victimized by domestic or foreign terrorists as a direct result of their association or identification with the U.S. Government or its policies should be compensated by that government, whether they work in a U.S. mail-sorting facility, a federal building in Oklahoma City, or an embassy abroad. We are frankly appalled at the callous disregard that elected U.S. officials have shown for American victims of terrorism like David Hose, in contrast with the great concern shown for those victimized in the halls of the Pentagon and the high-rise offices of the New York World Trade Center. The lives of these average American civilians are no less deserving.

Mr. Hose's claim for compensation is particularly compelling, since he was injured not only because he bravely continued doing his job, helping to sort the mail of high-level U.S. government officials in the days following the well-publicized anthrax mail threat, but also because officials negligently (a) failed to institute adequate security measures for the proper handling of weapons-grade anthrax spores and (b) failed to enforce established health and safety measures at the mail-sorting facility where Mr. Hose worked. Either safeguard could have readily prevented Mr. Hose's injuries.

If any additional documentation is needed or desired, we would expect prompt notification so that Mr. Hose's administrative claim can be duly supplemented in a timely manner. We would kindly request written confirmation within two weeks of receipt that this claim has been duly presented.

Sincerely Yours,

Joshua R. Treem, Esq.

Timothy K. Dole, Esq.
Attorneys for David R. Hose

Enclosures

cc (w/o attachments): David R. Hose (206 E. Whitlock Avenue, Winchester, VA 22601-4430)
U.S. Department of Defense (1155 Defense Pentagon, Wash., DC 20301)
Sen. George Allen (Va.)
Sen. John Warner (Va.)
Sen. Patrick J. Leahy (Vt.)
Rep. Frank R. Wolf (Va.)

**AMENDED**

# CLAIM FOR DAMAGE, INJURY, OR DEATH

**INSTRUCTIONS:** Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions.

FORM APPROROVED OMB NO. 1105-0008 EXPIRES 5-31-05

1. Submit To Appropriate Federal Agency:

U.S. Department of State
U.S. Department of Defense
U.S. Department of the Army

2. Name, Address of claimant and claimant's personal representative, if any. *(See instructions on reverse.) (Number, street, city, State and Zip Code)*

David R. Hose; 206 E. Whitlock; Winchester, VA 22601-4430; Joshua Treem, Esq.; 401 E. Pratt St., Ste. 1800; Baltimore, MD 21202

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME *(A.M. OR P.M)* |
|---|---|---|---|---|
| MILITARY CIVILIAN X | 09/08/1942 | Married | approx 10/15/01-10/22/01 | unknown |

8. Basis of Claim *(State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)*

See Attached Letter, incorporated herein by reference.

9. **PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT *(Number, street, city, State, and Zip Code)*

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. *(See instructions on reverse side)*

N/A

10. **PERSONAL INJURY/WRONGFUL DEATH**

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT

Personal injury from inhalation of anthrax spores; see Attached Letter, incorporated herein by reference.

11. **WITNESSES**

| NAME | ADDRESS *(Number, street, city, State, and Zip Code)* |
|---|---|
| See Attached Letter, incorporated herein by reference. | See Attached Letter, incorporated herein by reference. |

12. *(See instructions on reverse)* **AMOUNT OF CLAIM** *(in dollars)*

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL *(Failure to specify may cause forfeiture of your rights.)* |
|---|---|---|---|
| N/A | $12,000,000.00 | N/A | $12,000,000.00 |

**I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM**

| 13a. SIGNATURE OF CLAIMANT *(See instructions on reverse side.)* | 13b. Phone number of signatory | 14. DATE OF CLAIM |
|---|---|---|
| X David R. Hose, Sr. | 540-678-8953 | X 10-11-03 |

**CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM**

The claimant shall forfeit and pay to the United States the sum of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the United States. *(See 31 U.S.C. 3729.)*

**CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS**

Imprisonment for not more than five years and shall be subject to a fine of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the United States. *(See 18 U.S.C.A. 287.)*

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.

C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.

D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## INSTRUCTIONS

**Complete all items – Insert the word NONE where applicable**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT, THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in item #1 on the reverse side. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplemental regulations also. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with said claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file claim for both personal injury and property damage, claim for both must be shown in item #12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim "invalid". A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

**Failure to specify a sum certain will result in invalid presentation of your claim And may result in forfeiture of your rights.**

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or other aspect of this collection of information, including suggestions for reducing this burden,

to Director, Torts Branch
Civil Division
U.S. Department of Justice
Washington, DC 20530

and to the
Office of Management and Budget
Paperwork Reduction Project (1105-0008)
Washington, DC 20503

## INSURANCE COVERAGE

In order that subrogation claims be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance? Yes, if yes give name and address of insurance company (*Number, street, city, State, and Zip Code*) and policy number. No

N/A (no vehicle or property damage)

16. Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?

Virginia Worker's Compensation Insurance filed

17. If deductible, state amount

N/A

18. If claim has been filed with your carrier, what action has your insurer taken or proposes to take with reference to your claim? (*It is necessary that you ascertain these facts*)

$526.51 paid weekly plus certain medical bills

19. Do you carry public liability and property damage insurance? Yes, If yes, give name and address of insurance carrier (*Number, street, city, State, and Zip Code*) No

N/A (no vehicle or property damage)



* U.S. GOVERNMENT PRINTING OFFICE: 1989--241-175

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| David R. Hose<br>206 E. Whitlock Avenue<br>Winchester, Virginia 22601 | The United States of America |
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ______<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT<br>(IN U.S. PLAINTIFF CASES ONLY) 11001<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)<br>Leslie D. Hershfield, Esquire<br>Schulman, Treem, aminkow, Gilden & Ravenell, P.A.<br>401 East Pratt Street, Suite 1800<br>Baltimore, Maryland 21202<br>410-332-0850 | ATTORNEYS (IF KNOWN) |

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 3 Federal Question (U.S. Government Not a Party)
- ⦿ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ⦿ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ⦿ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. *Antitrust*

- ☐ 410 Antitrust

### ○ B. *Personal Injury/ Malpractice*

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☒ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

### ○ C. *Administrative Agency Review*

- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. *General Civil (Other)* OR ○ F. *Pro Se General Civil*

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| | | | |
|---|---|---|---|
| ○ **G. *Habeas Corpus/ 2255*** ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ○ **H. *Employment Discrimination*** ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ○ **I. *FOIA/PRIVACY ACT*** ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ○ **J. *Student Loan*** ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ○ **K. *Labor/ERISA (non-employment)*** ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ○ **L. *Other Civil Rights (non-employment)*** ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ○ **M. *Contract*** ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ○ **N. *Three-Judge Court*** ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding ○ 2 Removed from State Court ○ 3 Remanded from Appellate Court ○ 4 Reinstated or Reopened ○ 5 Transferred from another district (specify) ○ 6 Multi district Litigation ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 **DEMAND $** 12,000,000.00 Check YES only if demanded in complaint **JURY DEMAND:** YES ☒ NO ☐

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☒ If yes, please complete related case form.

**DATE** 10-04-07 **SIGNATURE OF ATTORNEY OF RECORD** [signature]

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

**I.** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

**III.** CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section **II.**

**IV.** CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

**VI.** CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

**VIII.** RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.